Arthur S. Lord v. Commissioner.
Arthur S. Lord v. Commissioner
Docket No. 27532.
United States Tax Court
1951 Tax Ct. Memo LEXIS 212; 10 T.C.M. (CCH) 521; T.C.M. (RIA) 51156; May 31, 1951
James W. Cooper, Esq., for the petitioner. Robert Margolis, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the income and victory tax of petitioner for the calendar year 1943 in the amount of $772.84. [1] The sole issue is whether rental payments made by petitioner in the amount of $1,485 in 1942 and $1,980 *213 in 1943 are deductible as non-business expenses under the provisions of Section 23 of the Internal Revenue Code, as amended by Section 121 of the Revenue Act of 1942. Findings of Fact Petitioner is an attorney and a resident of Weston, Connecticut. He filed his Federal income tax return and an amended Federal income tax return for the taxable year 1942 on March 15, 1943, and March 15, 1945, respectively. His return for the taxable year 1943 was filed on March 15, 1945. These returns were filed with the collector of internal revenue for the district of Maryland. In April, 1940, the petitioner leased the premises located at 162 Prospect Street, New Haven, Connecticut, from Yale University for residential purposes. The lease was for a period of ten years, but was terminable at the end of five years upon proper notice and upon payment of a penalty of $500. The University insisted upon a long-term lease as a condition precedent to spending a substantial sum renovating and modernizing the house for the petitioner. The petitioner, who had been *214 practicing law in New York, moved to New Haven on September 1, 1940, with his family to engage in postgraduate work in economics at Yale University. He had in mind that this might eventually lead to employment as a teacher at the University. He and his wife found that living in the leased premises was far more expensive than they had anticipated, and that living in New Haven was not as pleasant as they had hoped it would be. Moreover, petitioner was neglecting his studies at Yale in favor of some legal work in New York City, and the departure of some members of the graduate school faculty to other cities to engage in war work had an adverse effect upon the courses he was taking. In January, 1942, the petitioner accepted a position in Washington, D.C., with the Export-Import Bank, and rented an apartment in that city for a one-year term. During the same month he listed the New Haven house with the Yale University Rental Bureau for rent at $165 a month, which was the amount he was paying under the lease. He told the Bureau that he was leaving the property for good, had no intention of returning to it, and was anxious to find a tenant as soon as possible. Later in the spring of 1942 *215 the house was listed with other real estate agencies in New Haven. "For Rent" signs were placed on the property. Under the lease the University's approval of any sublease was required. When the petitioner listed the property for rent with the University, it cooperated in every way in attempting to sublease on behalf of the petitioner. Petitioner and his family moved to Washington on March 20, 1942. Before leaving New Haven he turned the keys to the house over to the University and one of the rental agencies, and notified the others that they could acquire access to the property through the University. He moved most of the furnishings of the New Haven house to Washington, put some in storage in New Haven, and left a few items in the house which he thought might make it more readily rentable. These items included venetian blinds and stair carpeting. The petitioner expected to rent the New Haven property quickly. It proved to be difficult to rent, however, because of wartime conditions. Although the real estate agencies had several prospects, the petitioner was not successful in obtaining a tenant during the years 1942 and 1943, despite the fact that he gradually lowered the rental *216 asked from $165 to $100 a month. He finally, with the approval of the University, rented the property in 1944 for $125 per month. The petitioner permanently abandoned the use of the New Haven house as a residence on March 20, 1942. In his amended return for the year 1942 and his return for the year 1943 petitioner claimed as deductions the respective amounts of $1,485 and $1,980, which represented the amount of rentals paid by him on the New Haven property from and after March 30, 1942. The claimed deductions were disallowed by the respondent. Opinion RAUM, Judge: The petitioner contends that the rental paid by him on the Connecticut property during the years 1942 and 1943 and disallowed by the respondent is deductible under the provisions of Section 23 (a) (2), Internal Revenue Code, which permits an individual to deduct "all ordinary and necessary expenses paid * * * for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income". These provisions were added to the Internal Revenue Code by Section 121 of the Revenue Act of 1942 (56 Stat. 798, 819). Prior thereto taxpayers *217 not engaged in business were not allowed deductions for ordinary and necessary expenses for the production of income and were thus in effect taxed on gross income. The amendment was adopted to correct this inequity. See H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 46, 75; S. Rep. No. 1631, 77th Cong., 2d Sess., pp. 87-88. Pertinent provisions of Regulations 111, Section 29.23 (a)-15 (as amended by T.D. 5331, 1944 C.B. p. 98) are set forth in the margin. [2]
*218 The respondent contends that the rental payments made by petitioner after March 20, 1942, are not deductible under the provisions of Section 23 (a) (2). He contends that there must be an actual production of income, not merely an effort to produce income, before the payments can be treated as expenditures made "for the production * * * of income", and that rentals paid on a lease for a vacated personal residence cannot qualify as expenses paid "for the management, conservation, or maintenance of property held for the production of income". He also urges that the rental payments were never made with the idea of gain, but were paid as a personal obligation under a binding lease, and the attempt to sublease was merely to minimize what would have been a total loss. We think that the payments are deductible. Actual receipt of income during the taxable year is not necessary to bring a transaction within the provisions of Section 23 (a) (2), supra. As was stated by the report of the House Ways and Means Committee, commenting on the new provisions, an expense is deductible under this section if the payment is made "in the pursuit of income or in connection with property held for the production *219 of income". H. Rep. No. 2333, supra, p. 46. Cf. Mary Laughlin Robinson, 2 T.C. 305. True, the petitioner's original intention in acquiring the lease was to occupy the property as a residence. However, he subsequently accepted a position in Washington, D.C., and decided to abandon his New Haven residence as a home. Beginning in January, 1942, and continuing through the years 1942 and 1943, he made diligent efforts through real estate firms to rent the property without success. We are convinced that on March 20, 1942, when he and his family left New Haven the property had been converted to rental purposes by affirmative action and that thereafter it was held for the production of income. One of the ordinary and necessary expenses of a lessee engaged in subletting or attempting to sublet leased premises is the payment of rent under the terms of the lease. The mere fact that petitioner was attempting to minimize a possible loss in seeking to obtain an income-producing sublease does not render Section 23 (a) (2) inapplicable. Cf. Regulations 111, Section 29.23(a)-15. Where it appears, as here, that there was a fixed intention on the part of petitioner not to return to New *220 Haven and again use the leased premises for residential purposes, rental payments made while a diligent effort is being made to secure a sublessee qualify as ordinary and necessary expenses paid "for the production of income" within the meaning of Section 23 (a) (2). Having reached this conclusion, it is unnecessary to consider whether they might also qualify as expenses paid "for the * * * conservation, or maintenance of property held for the production of income". The respondent erred in disallowing the deductions claimed for the years 1942 and 1943. Decision will be entered for the petitioner. Footnotes
1. The deficiency was computed on the basis of the 1942 and 1943 income under the Current Tax Payment Act of 1943.↩
2. Regulations 111: SEC. 29.23(a)-15. NONTRADE OR NONBUSINESS EXPENSES. - (a) In general. - Subject to the qualifications and limitations in chapter 1 and particularly in section 24, an expense may be deducted under section 23 (a) (2) only upon the condition that: (1) It has been paid or incurred by the taxpayer during the taxable year (i) for the production or collection of income which, if and when realized, will be required to be included in income for Federal income tax purposes, or (ii) for the management, conservation, or maintenance of property held for the production of such income; and (2) it is an ordinary and necessary expense for either or both of the purposes stated in (1) above. * * * Similarly, ordinary and necessary expenses incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses incurred in managing, conserving, or maintaining property held for investment may be deductible under this provision even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. The expenses, however, of carrying on transactions, which do not constitute a trade or business of the taxpayer and are not carried on for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, but which are carried on primarily as a sport, hobby, or recreation are not allowable as nontrade or nonbusiness expenses. * * *
Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home.↩