MARTIN H. FISHMAN AND HARRIET FISHMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fishman v. Commissioner
Docket Nos. 3916-81, 771-82, 772-82, 773-82.
United States Tax Court
T.C. Memo 1986-127; 1986 Tax Ct. Memo LEXIS 479; 51 T.C.M. (CCH) 738; T.C.M. (RIA) 86127; March 31, 1986; REVERSED January 12, 1988 Martin H. Fishman, pro se. Arthur W. Friedman, for the petitioners in docket Nos. 771-82, 772-82, and 773-82. Janet A. Engel, for the respondent. TANNEWALD MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket No.
Taxable Year
Deficiency
3916-81
1976
$3,498
1977
1,088
771-82
1977
20,141
1978
4,463
772-82
1977
30,746
1978
7,024
773-82
1977
454
After concessions, the issues for decision are (1) whether costs incurred by the partnership prior to November 1, 1977 were for the production of income, or for the maintenance, management or conservation of property held *481 for the production of income, and in turn are deductible as expenses under section 212(1)[2] or 212(2), or, alternatively, are deductible under section 162(a), and (2) whether the "professional" fees deducted by the partnership in 1976 are nondeductible partnership organizational expenses under section 709(a). FINDINGS OF FACTS Some of the facts have been stipulated and are so found. This reference incorporates the stipulations of facts and attached exhibits. Petitioners Martin Fishman and Harriet Fishman resided in Lincolnwood, Illinois at the time they filed their petition in this case. They timely filed joint Federal income tax returns for the years 1976 and 1977. The trustee of petitioner Seymour N. Logan Insurance Trust - Trust B (the "trust"), Milton I. Shadur, resided in Glencoe, Illinois at the time he filed his petition. Timely Federal fiduciary income tax returns (Forms 1041) were filed for the trust for the taxable years ending *482 June 30, 1977 and June 30, 1978, with the Internal Revenue Service Center, Kansas City, Missouri. Petitioner Renee Logan resided in Chicago, Illinois at the time she filed her petition. She timely filed Federal income tax returns for the years 1977 and 1978 with the Internal Revenue Service Center, Kansas City, Missouri. Petitioner Harold Halpern resided in Chicago, Illinois at the time he filed his petition. He timely filed a Federal income tax return for the year 1977 with the Internal Revenue Service Center, Kansas City, Missouri. Pursuant to a partnership agreement (the "agreement"), entered into by petitioners Harold Halpern and Renee Logan and dated August 21, 1975, the Johnstowne Centre Partnership (the "partnership") was created. The partnership was formed for "the limited purposes of leasing, constructing, developing, and otherwise dealing with real and personal property in connection with the development of" a multi-unit commercial project (shopping center) on property in Champaign, Illinois (the "Project"). On September 19, 1975, petitioner Halpern, on behalf of the partnership, entered into an agreement by which the partnership obtained an option to enter into *483 a 50 year ground lease of the property intended to be developed. On February 15, 1976, the partnership entered into a trust agreement with the American National Bank and Trust Company of Chicago by which the partnership, the trust's sole beneficiary, empowered the trustee-bank to acquire a leasehold interest on behalf of the partnership in the property on which the Project was to be developed. On July 13, 1976, the partnership exercised the aforesaid option and on September 30, 1976, the trustee-bank and the owner entered into a 50 year lease on the property for a monthly rental of $2,500. In August 1976, the partnership received a permanent mortgage loan standby commitment in the amount of $900,000 from Mutual Home Savings & Loan. The partnership paid a $9,000 fee for the commitment and $9,000 to the firm of Salk, ward and Salk for their services in negotiating the commitment. In November 1976, the partnership received a $900,000 construction mortgage loan commitment from Busey First National Bank and paid it a $9,000 commitment fee, one-half of which was paid in 1976 and the balance in 1977. On December 31, 1976, the partnership entered into a construction contract with Turnkey, *484 Inc., for the construction of the Project, calling for the completion of the Project by the fall of 1977. On February 25, 1976, the partnership entered into its first lease with a commercial tenant. Six subsequent leases were entered into during 1976. During 1977, five additional leases were entered into, all prior to November 1. Security deposits were received by the partnership with respect to every lease. When ground breaking for the shopping center took place in March 1977, approximately 1/3 of the space in the shopping center had been leased to commercial tenants. On March 23, 1977, the ground lease was amended to require the trustee-bank to provide an irrevocable letter of credit to be issued by First National Bank of Chicago. The letter of credit authorized the lessor to draw on the partnership account in the amount of $500,000 in the event, among other things, that the Project had not been completed in basic accordance with the construction contract entered into by the partnership and Turnkey, Inc. The letter of credit was in lieu of a performance bond initially called for in the lease that the contractor had been unable to secure. The partnership paid a $4,930.55 *485 fee to First National Bank of Chicago to obtain the letter of credit. In September 1977, the partnership advised its prospective tenants that their space would be available on September 30, 1977, and that rent would not be due until November 1, 1977. This schedule was adhered to. The partnership's Federal income tax return for 1977 states that it acquired the shopping center on November 1, 1977. In addition to the rents and fees already mentioned, the partnership incurred the following expenses during the taxable year ending December 31, 1976, and during the first ten months of the taxable year ending December 31, 1977: [3]
12/31/76
10/31/77
Trust Fee
$166.00
$95.00
Business Promotion and
Organization
1,798.00
0 Advertising
391.00
0 Professional Fees
7,930.00
0 Miscellaneous
655.00
20.19
Office Expense
293.00
0 Insurance
148.00
0 Consulting
1,340.00
0 Survey
666.00
0 Accounting and Legal
0 350.00
Travel and Auto
0 1,415.33
Telephone and Office
599.00
1,169.66
*486 OPINION Initially, we observe that the focus of this case is a narrow one. Respondent's disallowances are grounded for the most part on the so-called "preopening expense doctrine" which he claims is applicable both under section 162(a)[4] and section 212. He urges us to overrule Johnsen v. Commissioner,83 T.C. 103 (1984) and Hoopengarner v. Commissioner,80 T.C. 538 (1983), affd. without published opinion 745 F.2d 66 (9th Cir. 1984). In the event we do not accede to his urging, with the exception of the brokerage fee and "professional" fees, see infra pp. 10-13, respondent does not argue that the disallowed items are otherwise not deductible.[5]
*487 In Hoopengarner v. Commissioner,supra, taxpayer acquired a leasehold interest in a parcel of undeveloped land and proceeded to construct and operate an office building on the leased premises. We held that, pursuant to section 212(2), taxpayer could deduct rental payments under the ground lease, even though such payments were incurred before the building was completed and occupied and were thus nondeductible as "preopening expenses" under section 162. In so holding, we concluded that the "preopening expense doctrine" did not apply to section 212 since such section has no "trade or business" requirement. 80 T.C. at 543. In Johnsen v. Commissioner,supra, a partnership acquired a leasehold interest in a piece of property on which it constructed and operated a project. In extending our holding in Hoopengarner v. Commissioner,supra, we held that, pursuant to section 212(1) or 212(2), the taxpayer could deduct his share *488 of construction loan commitment, permanent loan commitment [6] and management and guarantee fees claimed by the partnership, even though these expenses were incurred prior to the opening of the project. 83 T.C. at 119. [7] In so holding, we rejected respondent's contention that Hoopengarner was incorrectly decided and should be overruled. We made it clear that, at the time Hoopengarner was before this Court, respondent's arguments had been thoroughly considered and rejected and that our position had not changed. 83 T.C. at 117. Since our decision in Johnsen, the Ninth Circuit Court of Appeals has affirmed our decision in Hoopengarner (745 F.2d 66 (9th Cir. 1984)). [8] We again reject respondent's assertion that we incorrectly decided Hoopengarner and Johnsen.[9] Accordingly, we hold that with the exception of the brokerage and "professional" fees, discussed below, petitioners are entitled to all their claimed deductions.[10]
*489 Respondent's concession as to the commitment fees, see supra note 7, expressly did not cover the $9,000 brokerage fee paid to secure the permanent loan commitment. Thus, we must address the capital expenditure versus deductible expense issue which is involved in determining the correctness of respondent's disallowance of the current deductibility in full of this item. Nothing in either Johnsen v. Commissioner,supra, or Hoopengarner v. Commissioner,supra, affects our disposition of this issue; those cases involved the current deductibility of annual expense items or the amortizable portion of certain expenditures under the "preopening expense doctrine." It is well-established that a brokerage fee in respect of a loan commitment is a capital expenditure that must be amortized over the life of the loan. Duffy v. United States,231 Ct. Cl. 679, 690 F.2d 889, 896 (1982); Lay v. Commissioner,69 T.C. 421, 439 (1977); Longview Hilton Hotel Co. v. Commissioner,9 T.C. 180, 182 (1947); cf. Rev. Rul. 57-400, 1957-2 C.B. 520. *490 Consequently, respondent's disallowance of this item as a currently deductible expense is sustained. Similarly, to the extent that we find that the $7,930 in "professional" fees deducted by the partnership in 1976 qualified as a partnership organizational expense under section 709(a), they were properly disallowed, because section 709(a) provides that: [e]xcept as provided in subsection (b), no deduction shall be allowed under this chapter to the partnership or to any partner for any amounts paid or incurred to organize a partnership or to promote the sale (or to sell) an interest in such partnership. [11]
Moreover, section 1.709-2(a), Income Tax Regs., defines "[l]egal fees for services incident to the organization of the partnership, such as negotiation and preparation of a partnership agreement" as an example of an organizational expense within the meaning of section 709. *491 To sustain their claimed deduction with respect to the "professional" fees, petitioners rely on the oral testimony of Mr. Fishman at trial that the bulk of these legal expenses were incurred in connection with the financing activities of the partnership. Respondent asks that we disallow the entire expense as a nondeductible organizational expense because petitioners have failed to meet their burden of proof (see Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933)) that only a portion of these expenses were nondeductible. We agree with respondent. We are satisfied that an unspecified portion of the "professional" fees were section 709 expenses. In order for this Court to make a reasonable estimate as to what portion of these fees are deductible expenses, see Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), there must be sufficient evidence that at least the amount allowed in such an estimate was in fact incurred for deductible legal fees. Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957); Johnsen v. Commissioner,supra at 127. *492 Although we recognize that it is improbable that the full $7,930 in legal fees were incurred solely to form the partnership, Mr. Fishman's general testimony furnishes us with no basis for determining how much time and effort was spent between the two categories of activities and there is no other evidence in the record on this score. Thus, respondent's disallowance of the entire deduction for this item is sustained. See Merians v. Commissioner,60 T.C. 187, 189-190 (1973). To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Seymour N. Logan Insurance Trust - Trust B, Milton I. Shadur, Trustee, docket No. 771-82; Renee Logan, docket No. 772-82; and Harold Halpern, docket No. 773-82.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
3. With respect to the 1977 taxable year, it appears from a comparison of the partnership return and the statutory notices of deficiency that respondent has only disallowed those expenses that were incurred prior to the opening of the shopping center on November 1, 1977.↩
4. Section 162(a) provides that a taxpayer may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business." It is well settled that section 162(a) operates to deny a taxpayer deductions for "preopening expenses" of the type here in issue which are incurred prior to the time that a business begins to function as a going concern and performs those activities for which it was organized. Richmond Television Corp. v. United States,345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965); Johnsen v. Commisioner,83 T.C. 103, 114 (1984); Hoopengarner v. Commissioner,80 T.C. 538, 540 (1983), affd. without published opinion 745 F.2d 66 (9th Cir. 1984); Goodwin v. Commissioner,75 T.C. 424, 435 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); Madison Gas & Electric Co. v. Commissioner,72 T.C. 521, 566-567 (1979), affd. 633 F.2d 512, 517↩ (7th Cir. 1980). 5. With respect to the commitment fees, respondent expressly concedes their deductibility, see infra↩ note 7.
6. We disallowed a portion of the permanent loan commitment fee because we deemed it to be excessive and not reasonable in amount, and thus not ordinary and necessary under section 212. Johnsen v. Commissioner,supra↩ at 122-125. There is no issue as to reasonableness in the instant case. 7. As in Johnsen, respondent has conceded herein that, to the extent that the commitment fees are otherwise deductible under sec. 212, he will follow Rev. Rul. 56-136, 1956-1 C.B. 92, revoked prospecrively only, Rev. Rul. 81-160, 1981-1 C.B. 312, and will not contend that the commitment fees are capital expenditures. While we thus have no occasion to look behind respondent's concession, we note that respondent's position on this question was, to say the least, murky prior to the issuance of Rev. Rul. 81-160. See Duffy v. United States,231 Ct. Cl. 679, 690 F.2d 889, 893-894 (1982); Johnsen v. Commissioner,supra at 121 n.8; Francis v. Commissioner,T.C. Memo. 1977-170; Rev. Rul. 75-172, 1975-1 C.B. 145↩. 8. We note that the Eighth Circuit Court of Appeals has recently declined to follow the Hoopengarner path. See Aboussie v. Commissioner,779 F.2d 424, 428-429↩ n.6 (8th Cir. 1985). 9. Respondent asserts that we failed to consider his argument in Johnsen that the taxpayer had not shown that he had a possessory or proprietary interest in any income producing property, and thus did not qualify for a section 212 deduction. Although we dismissed this argument in Johnsen as having been untimely raised, we made it clear in Hoopengarner v. Commissioner,supra at 541, that while: [w]e are conscious that there is a requirement under section 212 that the taxpayer have a proprietary or possessory interest in the income producing property * * * [w]e have found that petitioner met this requirement by virtue of his ownership of the lease. * * * [Emphasis added. Citations omitted.] To the extent that respondent is relying on the fact that the trustee-bank and not the partnership was the record lessee to distinguish the instant situation from that which existed in Johnsen and Hoopengarner, we think he is grasping at a straw. Any such distinction is a distinction without a difference since the trustee-bank was clearly the agent of the partnership and performed no function other than that of the nominal lessee. Cf. Derr v. Commissioner,77 T.C. 708, 724-725 n.11 (1981); People v. Chicago Title & Trust Co.,75 Ill. 2d 479, 389 N.E.2d 540, 545 (1979). We note that section 195, which was added to the Internal Revenue Code as part of the Miscellaneous Revenue Act of 1980, Pub. L. 96-605, 94 Stat. 3521 and was amended under the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, disallows current deductions for start-up expenditures, but does allow the taxpayer to elect to amortize these expenditures for a period of not less than 60 months. Section 195, as amended, however, is only applicable to taxable years beginning after June 30, 1984. ↩
10. In light of our allowance of petitioners' deductions under section 212, we find it unnecessary to address petitioners' alternative argument that these expenses are deductible under section 162. We do note, however, that for the same reasons to be outlined below, petitioners' claimed deductions for brokerage and "professional" fees would be similarly disallowed under a section 162↩ analysis.
11. Section 709(b)↩ provides for the amortization of specified organizational expenses over a period of not less than 60 months, if the partnership so elects, effective with respect to taxable years beginning after December 31, 1976. The partnership made no such election.