Martin H. FISHMAN, et al.,
Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 87–1570.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1987.

Decided Jan. 12, 1988.

---

Frances M. Allegrd, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellant.

Arthur W. Friedman, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for petitioners-appellees.

Before POSNER and COFFEY, Circuit Judges, and NOLAND, Senior District Judge.*

POSNER, Circuit Judge.

This appeal by the Internal Revenue Service from a decision by the Tax Court requires us to decide whether the costs incurred by an individual in starting a business may be deducted as current expenses (rather than having to be capitalized) under section 212(2) of the Internal Revenue Code, which allows an individual to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year ... for the management, conservation, or maintenance of property held for the production of income."

The taxpayers formed a partnership to develop a shopping center on a piece of land which they did not own. In August 1976 the partnership obtained a standby commitment from a bank for a permanent mortgage, paying a $9,000 commitment fee to the bank and a similar fee to a broker. In September the partnership leased the development site from the owner for 50

* Hon. James E. Noland of the Southern District of Indiana, sitting by designation.

years, at a monthly rental, beginning immediately, of $2,500. In November it obtained a commitment from a bank for a construction mortgage fee of $9,000, half of which was paid in 1976 and the other half in 1977. The partnership incurred a number of other expenses in 1976, including almost $8,000 in professional (mainly legal) fees and several thousand dollars in advertising, promotion, consulting, office, and insurance expenses. Construction of the shopping center began on March 1, 1977, and was completed on September 1, by which time the partnership had signed leases with a number of tenants. The tenants had made deposits, and even paid some rental, before occupancy on September 1. But after deducting from this income the various fees and expenses that we have mentioned, the partnership reported net losses on its income tax returns for 1976 and 1977, losses which in turn showed up on the partners' income tax returns.

The Internal Revenue Service disallowed the deductions and assessed deficiencies against the partners, resulting in this litigation. The Tax Court held that the $9,000 brokerage fee paid to secure the standby commitment for the permanent mortgage was a capital expenditure that must be amortized over the life of the mortgage and that the professional fees were nondeductible partnership organizational expenses (see 26 U.S.C. § 709(a)), but that the rest of the fees and expenses were deductible under section 212(2) even though incurred before the shopping center was built and began to operate. 51 T.C.M. (CCH) 738, T.C. Memo 1986–127 (1986). In so holding the court relied on two earlier decisions, *Hoopengarner v. Commissioner*, 80 T.C. 538 (1983) (sharply criticized in Keller, *The Capitalization of Construction Costs: Expanding the Scope of Idaho Power*, 62 Taxes 618 (1984)), and *Johnsen v. Commissioner*, 83 T.C. 103 (1984). *Hoopengarner* was affirmed by the Ninth Circuit in an unpublished opinion, 745 F.2d 66 (1984), but *Johnsen* was reversed by the Sixth Circuit in a published opinion, 794 F.2d 1157 (1986). We must decide whether we agree with the Ninth Circuit or with the Sixth Circuit and the Eighth Circuit, which has also rejected

*Hoopengarner*. See *Aboussie v. United States*, 779 F.2d 424 (1985). Although an amendment to section 195 of the Internal Revenue Code requires that start-up costs incurred by individuals after July 1, 1984, be capitalized, the government's counsel told us at argument that there are thousands of pending disputes, involving in the aggregate many millions of dollars, over start-up costs incurred by individuals before the amendment went into effect—so many disputes, indeed, involving so much money, that the government might have to ask the "Court of Nine" (as counsel called it) to resolve the conflict among the circuits.

The case is fairly simple once it is located in the right matrix of statutory provisions and tax principles. Until 1942 the only statutory authority for deducting expenses incurred in profit-making activities was the predecessor to section 162, a provision expressly limited to expenses incurred "in carrying on any trade or business." Individuals who incurred expenses for the production of nonbusiness income—for example, income from passive investments—were out in the cold. That year Congress, in an effort to correct the unequal treatment of business and nonbusiness income, enacted the predecessor to section 212. The legislative history indicates that, other than by relaxing the requirement that the expenses be incurred in the operation of a trade or business, section 212 is not intended to spare individuals who incur expenses for the production of nonbusiness income from any of the "restrictions and limitations that apply in the case of a deduction under" section 162. H.Rep. No. 2333, 77th Cong., 2d Sess. 75 (1942); S.Rep. No. 1631, 77th Cong., 2d Sess. 88 (1942); see *United States v. Gilmore*, 372 U.S. 39, 44–45, 83 S.Ct. 623, 626–27, 9 L.Ed.2d 570 (1963); *Woodward v. Commissioner*, 397 U.S. 572, 575 n. 3, 90 S.Ct. 1302, 1305 n. 3, 25 L.Ed. 2d 577 (1970). "In enacting section 212, Congress intended to place all income-producing activities on equal footing." *Snyder v. United States*, 674 F.2d 1359, 1364 (10th Cir.1982).

■ In a long line of decisions under section 162, the courts (including the Tax Court) have held that "pre-opening" expenses, that is, expenses incurred before the taxpayer's trade or business begins to operate (what we are calling "start-up costs"), are not deductible. See, e.g., *Madison Gas & Elec. Co. v. Commissioner*, 633 F.2d 512, 517 (7th Cir.1980); *Central Texas Savings & Loan Ass'n v. United States*, 731 F.2d 1181, 1183 (5th Cir.1984); *Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir.), vacated on other grounds, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143 (1965) (per curiam); *Waddell v. Commissioner*, 86 T.C. 848, 895 (1986). They yield benefits over the entire life of the enterprise, and therefore must be capitalized. An example of such an expense is a fee for incorporating a new firm. The benefits of the fee will not be exhausted in one year—the conventional period for determining whether an expenditure is fully deductible immediately, or must be capitalized, see *Encyclopaedia Britannica, Inc. v. Commissioner*, 685 F.2d 212, 217 (7th Cir.1982); *Snyder v. United States, supra*, 674 F.2d at 1365—but will continue for the life of the incorporated enterprise.

■ Although the taxpayers in this case thus could not deduct the expenses in question under section 162, the reason has little or nothing to do with the language of the section; as a matter of semantics, some of the expenses of carrying on a trade or business could be incurred before the trade or business went into operation. It has everything to do with the basic principle of tax law that—subject to considerations of expediency discussed in *Encyclopaedia Britannica, Inc. v. Commissioner, supra*, 685 F.2d at 215, 217, but not invoked in the present case—income and expense must be matched temporally in order to minimize the inevitable misallocations of resources that a taxing system creates. (This principle is codified in section 263(a) of the Code, which forbids the immediate deduction of "capital expenditures" even if they are ordinary and necessary business expenses. See also 26 U.S.C. § 161; *Clark Oil & Ref. Corp. v. United States*, 473 F.2d 1217 (7th Cir.1973).) Because of the time value of money—real riskless interest rates are positive—a deduction taken today is worth more than one taken a year from now. Hence if an expense incurred to produce future income can be deducted from current income rather than postponed until it has borne its fruits, taxpayers will have an incentive to incur such expenses earlier than they would if there were no income tax; and tax law seeks, to the extent compatible with revenue and distributive objectives, to interfere as little as possible with the pattern of expenditures that would exist in the absence of taxation. *Richmond Television Corp. v. United States, supra*, the leading case on the nondeductibility of pre-opening expenses under section 162, is explicit in linking its result to the principle of temporal matching. See 345 F.2d at 907–08; see also *David R. Webb Co. v. Commissioner*, 708 F.2d 1254, 1256 (7th Cir.1983); *Cleveland Electric Illuminating Co. v. United States*, 7 Cl.Ct. 220, 227–29 (1985).

■ The principle that income and expense must be matched temporally is a limitation on the right to deduct expenses incurred in profit-making (more precisely, profit-seeking) activity, and is logically applicable to start-up costs whether they are incurred by an individual, who can invoke section 212 as well as (if the income is business income) section 162, or by a corporation, which is confined to section 162. And we have seen that Congress intended to preserve all of section 162's restrictions and limitations in section 212, except the limitation to trades and businesses. So, for example, if a member of this panel rents a safe-deposit box to keep his securities in, he can deduct the annual rental under section 212; but if he buys a safe he must capitalize its purchase price—he can't just deduct the price from his investment income in the year of the purchase. Otherwise taxpayers would have an incentive unrelated to the efficient use of resources to buy rather than rent safe places for their securities.

■ This case is trickier than our example. The Internal Revenue Service is not quarreling with the taxpayers' deducting the ground rents and other expenses in those months when tenants were occupying the shopping center and paying rent. Just the earlier months are in issue. It is as if the Service were challenging the deduction of a safe-deposit box rental paid for several months before the taxpayer deposited any securities. Yet we know that a taxpayer can deduct as a current expense the costs it incurs to find customers, tenants, etc.—can even deduct the expense of finding a sublessee of his house. See *Lord v. Commissioner*, 10 T.C.M. (CCH) 521 (1951). The difference is the capital nature of the expenditure in this case. In *Lord* the house was there, and finding a tenant or series of tenants was a task necessary to realize income from it. The ground rents and other expenses in this case were expenses incurred in creating the shopping center, not in operating it once it got going. The argument that these expenditures did not create capital in the way that money paid to a bricklayer would is shallow; many other inputs go into the creation of a capital good besides construction materials and labor.

It is true that section 212 does not distinguish explicitly between current expenses and capital expenditures, and does not (as does section 162 via section 161) incorporate section 263 by reference. However, the key word in section 212—"expenses"—is more commonly associated with current expenses than with capital expenditures. More important, Congress from the beginning wanted section 212 to be interpreted consistently with section 162, as we have seen; and it would be absurd if a partnership that built a shopping center could deduct its start-up costs but a corporation could not. A further clue is section 195, which before the 1984 amendment mentioned earlier allowed both corporations and individuals to amortize start-up costs. The provision would have been pointless as applied to individuals if they could have deducted such costs as current expenses, since that would almost always be preferable from the taxpayer's standpoint. The 1984 amendment simply made clear, what had previously been assumed, that indeed they could not deduct such costs as current expenses.

■ Focusing on the ground-lease rentals that the partnership paid before the shopping center was finished and occupied, the taxpayers argue that rental is inherently a current expense. This is true enough if the rental is generating current revenue. Once the shopping center was in operation and throwing off income to the partnership, the rental that the partnership was paying to the owner of the land on which the shopping center had been built was a cost incurred to generate current income. So at least the Internal Revenue Service concedes in this case, making it unnecessary for us to decide whether a 50–year lease with an option to renew for 30 more years plus an option to buy might not be better analyzed as the purchase of a capital asset—the leasehold estate.

Before the shopping center began generating any income to the partnership, the rentals paid to the owner of the land were start-up costs indistinguishable from the expenses incurred in negotiating the lease; they were "advance payments in contemplation of future benefits." *Southwestern Hotel Co. v. United States*, 115 F.2d 686, 688 (5th Cir.1940). If an electrical utility buys a truck to use in building a nuclear power plant, the purchase price of the truck—as the taxpayers in this case concede—is not deductible under section 162; it is part of the capital expenditure for the plant. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974). Nor would it be deductible under section 212 if the utility happened to be an individual. See *Woodward v. Commissioner, supra,* 397 U.S. at 575, 90 S.Ct. at 1304. Even if the utility rented rather than bought a truck for this purpose, the (rental) expense would be a capital expenditure. If the partnership in this case had bought rather than leased the land on which to build the shopping center, the purchase price would have been a capital expenditure; so would (so was) the price of an option to buy the land; and so is the

cost of renting the land before the center is built—that cost is the price of an option in a different form.

 Regarding the other principal item allowed by the Tax Court, mortgage-commitment fees, the taxpayers argue that the Internal Revenue Service conceded in the Tax Court that those fees are deductible under section 212. That is not correct. The Service conceded that if the fees were "otherwise deductible" under section 212 it would not challenge their deductibility on the ground, for example, that they must be amortized over the term of the mortgages, as the Tax Court held with regard to the brokerage fee for the permanent mortgage. The word "otherwise" is a reference to the Tax Court's belief, which the Service obviously does not share, that start-up costs incurred by individuals are deductible under section 212. There was no concession relevant to this appeal.

 In holding that the Tax Court erred in allowing the deduction of ground lease rentals, commitment fees, and other start-up costs, we bypass two questions that might affect the outcome. The first is when the start-up period ceased, that is, when the trade or business, in this case the business of operating a shopping center, began. Such questions arise frequently in cases governed by section 162 alone because the taxpayer is a corporation, see, e.g., *Blitzer v. United States*, 684 F.2d 874, 880–81, 231 Ct.Cl. 236 (1982) (per curiam) (holding that a business may be said to have started before the actual receipt of income), and they should be decided the same way under section 212. The question remains for the Tax Court to decide on remand. Another open question is the proper tax treatment of the partnership's start-up costs. May they be amortized over the life of the shopping center? Section 195 would permit this—but the statute did not go into effect until 1980, which is too late for these taxpayers. See Lathen & Lathen, The *"Gap Period" Problem in Section 195*, 62 Taxes 416, 418 (1984). The usual treatment before section 195 was passed was to classify the start-up costs of a trade or business as part of its "going

concern" value, see *id.*, meaning that if and when it was sold these costs would be part of the trade or business's basis and hence would escape capital-gains taxation. Section 195 provided more favorable treatment from the taxpayer's standpoint by allowing such costs to be amortized but, as we have said, is not available to these taxpayers. However, we need not try to rewrite the deficiency notices. The ground of the Tax Court's decision was erroneous, and that decision must therefore be

REVERSED.