Alex A. ABOUSSIE, Alice Aboussie, Robert Aboussie and Linda Aboussie, Appellants,

v.

UNITED STATES of America, Appellee.

No. 84–2627.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1985.

Decided Dec. 9, 1985.

Gerald J. Zafft, St. Louis, Mo., for appellants.

Douglas Coulter, Dept. of Justice, Washington, D.C., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Alex and Robert Aboussie [1] initiated this action for tax refunds, alleging that the Government erroneously denied deductions for their distributive shares of losses suffered by their limited partnership, Bevo Place Associates, in 1978. The district

---

1. The wives of Alex and Robert Aboussie joined the action for refund and this appeal because they and their husbands filed joint 1978 returns.

court[2] disallowed the Aboussies' deductions, and the Aboussies appeal. We affirm in part and reverse in part, and remand for further proceedings.

## I. BACKGROUND.

Bevo Place Associates was formed in July 1978 to acquire real estate and to construct and rent low-income housing. The limited partnership purchased some land in St. Louis on which it constructed a housing project, Bevo Place Apartments. The partnership substantially completed the housing complex by June 1980.

Bevo Place Associates funded the construction of the housing project through a $4,950,000 loan from the Missouri Housing Development Commission (Missouri Housing). Although Missouri Housing issued only one note representing this debt, the loan materials spoke in terms of two loans: a "construction loan" for an eighteen-month period, carrying six percent interest per annum; and a "permanent loan" for an additional forty years carrying seven and one-half percent interest per annum.

As a condition of loaning money to Bevo Place Associates, Missouri Housing required that the partnership secure mortgage insurance guaranteeing repayment of the loan in case of default. Bevo Place Associates obtained this insurance from the Federal Housing Administration (FHA) and paid its first annual premium in 1978. Bevo Place Associates amortized the premium payment over twenty-one months—the period between when the partnership paid the premium and when the "construction loan" ended.

In making the loan, Missouri Housing charged Bevo Place Associates a $99,000 financing fee for processing and administering the "construction loan." It charged a separate service fee for the "permanent loan." Bevo Place Associates capitalized and amortized the construction loan financing fee over the eighteen-month period of the construction loan.

Other expenses incurred by the partnership in 1978 include $2,434 in real estate taxes on the St. Louis property and $5,000 organizational fees. The partnership amortized the organizational fees over sixty months, starting in July 1978.

On its 1978 income tax return, Bevo Place Associates reported a loss resulting from deductions for the interest paid on its Missouri Housing loan, the taxes paid on the real estate, and for amortized portions of the mortgage insurance premium, construction loan financing fee, and the organizational expenses.

Alex and Robert Aboussie are limited partners of Bevo Place Associates. In 1981, they amended their 1978 tax returns to reflect their distributive shares of the loss claimed by the partnership, and requested refunds in light of their deductions for the loss. The Government denied their refund requests, and the Aboussies brought this suit. The district court upheld the denial, disallowing the Aboussies' claimed deductions. The Aboussies challenge these rulings on appeal.

## II. DISCUSSION.

### A. Interest and Taxes.

Under *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974), expenditures directly related to the construction of a capital asset are "capital expenditures." Section 263(a)(1) of the Code generally prohibits deductions of such expenditures from current income. 26 U.S.C. § 263(a)(1)(1982). The taxpayer in *Idaho Power*, for example, sought a current depreciation deduction for transportation equipment used in the construction of capital improvements. The taxpayer relied on section 167(a), which provides that taxpayers can deduct depreciation attributable to the wear and tear on property used in a trade or business. *See* 26 U.S.C. § 167(a)(1982). The Supreme Court disallowed the deduction, however, determining that the depreciation represented a "cost" of the capital improvements. 418 U.S. at

---

**2.** The district court's opinion is reported at 600 F.Supp. 32 (E.D.Mo.1984).

16–17, 94 S.Ct. at 2766. Section 263(a)(1) therefore barred the taxpayer's claimed current deduction.

The Aboussies sought to deduct their distributive shares of Bevo Place Associates' 1978 loan interest under section 163, and real estate taxes under section 164. 26 U.S.C. §§ 163(a), 164(a)(1)(1982). The district court concluded, however, that section 263(a)(1) prohibited these deductions as relating to capital expenditures. The court reasoned that the partnership incurred the interest and tax expenses in the construction of a capital asset, the housing project. Therefore, the expenses constituted nondeductible "amount[s] paid out for new buildings" under section 263(a)(1).

We reject the district court's analysis and ruling that section 263(a)(1) bars the current deduction of interest and taxes incurred during the construction of a capital asset. The district court's holding not only conflicts with the historical treatment of these expenses, see Keller, *The Capitalization of Construction Costs: Expanding the Scope of Idaho Power*, 62 Taxes 618, 627 (1984), but also is contrary to several Code provisions. Section 266 and its regulations, for example, provide that taxpayers can elect between capitalizing or deducting interest relating to the construction of a capital asset. See 26 U.S.C. § 266 (1982); Treas.Reg. § 1.266–1(b)(ii)(a). The district court's holding eradicates the taxpayer's right to elect deductions by requiring mandatory capitalization under section 263(a)(1). See also Treas.Reg. § 1.163–1(a) (listing exceptions to interest deduction; section 263 not included among exceptions).

Section 189 of the Code also becomes irrelevant under the court's interpretation of the scope of section 263(a)(1). Enacted in 1976, the carefully drafted provisions of section 189 require capitalization of most construction period interest and taxes. See 26 U.S.C. § 189(a)(1982). The section specifically excludes interest and taxes incurred in the construction of low-income housing. See 26 U.S.C. § 189(d)(1)(1982). Bevo Place Associates' 1978 interest and taxes, incurred constructing low-income housing, are therefore exempted from capitalization under section 189. Notwithstanding this specific exclusion, however, the district court interpreted section 263(a)(1) to independently require such capitalization. Under the district court's interpretation of section 263(a)(1), section 189 is virtually meaningless.[3] The legislative history of section 189 indicates that Congress intended to change the abuses of the existing law, which it interpreted as permitting current deductions of construction period interest and taxes, and not merely to pad the Code with a redundant section.[4]

■ We conclude that section 263(a)(1) does not require capitalization of Bevo Place Associates' 1978 interest and taxes. We therefore reverse the district court's holding on this issue and remand with directions that the court permit the Aboussies to deduct their share of the interest and taxes that the court determines the

---

**3.** At oral argument, the Government's counsel admitted that, under the district court's reasoning, only section 189's amortization tables serve any purpose.

**4.** The House Report explained the existing law pertaining to construction period interest and taxes as follows:

Under the present law, amounts paid for interest and taxes attributable to the construction of real property are allowable as current deductions except to the extent the taxpayer elects to capitalize these items as carrying charges [under section 266]. * * * The deduction for taxes (sec. 164) includes sales and real estate taxes paid or accrued on real or personal property during the construction period.

\* \* \* \* \* \*

The present tax provisions relating to real estate are used by taxpayers in high marginal income tax brackets to avoid payment of income tax on substantial portions of their economic income. This is principally achieved by allowing current deductions for costs which many feel are attributable to later years. For example, during the construction period the interest paid on the construction loan and the real estate taxes are immediately deducted even though there is no income from the property.

H.R.Rep.No. 94–658, 94th Cong., 2d Sess. 30 (1976) (footnotes omitted), *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 2924.

partnership "paid or accrued" in 1978. 26 U.S.C. §§ 163(a), 164(a)(1).

### B. Mortgage Insurance Premium.

The district court also denied the Aboussies' claimed business deductions of an amortized portion of the mortgage insurance premium paid to the FHA in 1978. The court determined that the premium represented a cost of constructing the housing project, and therefore, a nondeductible capital expenditure under section 263(a)(1). The court alternatively held that Bevo Place Associates was not engaged in a "trade or business" in 1978, and that the premium payment hence constituted a nondeductible preoperating expense.

■■■ We do not agree with the characterization of the partnership's mortgage insurance premium as a construction cost of the housing project. Nondeductible capital expenditures under section 263(a)(1) include those expenses arising directly and immediately from the construction of a capital asset. *See Idaho Power, supra.* The annual premium payment related only incidentally to the housing project's construction: the premium purchased one year of mortgage insurance for the partnership; the mortgage insurance in turn helped the partnership obtain the Missouri Housing loan; and the loan ultimately financed the construction of the housing project. This attenuated connection between the 1978 premium and the eventual construction of the housing project does not make the payment of the premium a construction cost of the housing project. *See* Rev.Rul. 56–264, 1956–1 C.B. 153 (mortgage insurance premium is not a capital expenditure under section 263). The partnership therefore was not required to capitalize the premium as a construction cost and amortize it over the life of the housing project.[5]

---

**5.** No party raises on appeal and we do not decide whether the premium should have been capitalized and amortized over the term of the Missouri Housing loan. *See Trivett v. Commissioner,* T.C.Memo 1977–161 (mortgage insurance premium represents acquisition cost of loan and must be amortized over loan period).

■■■ We, however, affirm the district court's disallowance of the Aboussies' claimed deductions for the premium payment on grounds set forth in the district court's alternative holding that the premium represented a nondeductible preoperating expense. The Aboussies claimed the premium deductions under section 162(a), which authorizes deductions of expenses incurred in "carrying on any trade or business." 26 U.S.C. § 162(a)(1982). The district court found that Bevo Place Associates did not begin carrying on a business until 1980, when its housing project was substantially ready for rental. Accordingly, the court held that section 162(a) did not permit the Aboussies' deduction for the 1978 insurance premium, an expense incurred before the partnership engaged in business.

We conclude that the district court's finding that the partnership began "carrying on" business in 1980 was not clearly erroneous. A taxpayer starts "carrying on" business at that time when the facts show that the taxpayer will almost certainly engage in a profit-seeking activity. *See Bennett Paper Co. v. Commissioner,* 699 F.2d 450 (8th Cir.1983). In this case, the partnership intended to derive its profit by renting apartments in its housing project. In 1978, construction of the project had just barely begun. Considerable uncertainty hence existed over whether and when the project would ultimately produce profits. The business did not begin to function as a going concern until 1980. *See Goodwin v. Commissioner,* 75 T.C. 424 (1980), *aff'd,* 691 F.2d 490 (3d Cir.1982).

■■■ We therefore affirm the district court's denial of the Aboussies' deductions of the 1978 mortgage insurance premium as preoperating expenses.[6]

---

**6.** The Aboussies also argue that section 212 authorizes their deductions of the premium as an expense incurred for the maintenance of property held for the production of income. 26 U.S.C. § 212 (1982). They rely on *Hoopengarner v. Commissioner,* 80 T.C. 538 (1983), *aff'd by unpublished order,* 745 F.2d 66 (9th Cir.1984), for the proposition that preoperating expenses

## C. Construction Loan Financing Fee.

Missouri Housing conditioned its loan to Bevo Place Associates on the partnership's payment of a construction loan financing fee. Because this service fee represented a cost of obtaining the loan, the partnership was required to capitalize and amortize the fee over the life of the loan to which it related. *Duffy v. United States*, 690 F.2d 889, 895, 231 Ct.Cl. 679 (1982). The district court determined that the fee related to a single loan for forty-two years, the combined term of the Missouri Housing's construction and permanent financing.

The Aboussies contend that the district court erred in requiring a forty-two year amortization period. They argue that Missouri Housing made two loans to the partnership: a "construction loan" with a period of eighteen months, and a "permanent loan" with a period of forty years. They assert that the partnership properly amortized the fee over eighteen months.

 We disagree. The Aboussies failed to show that the partnership "engaged in sufficiently separate and distinct negotiations for construction and permanent financing, so as to have bargained for, and obtained, separable construction and permanent loans." *Noble v. Commissioner*, 79 T.C. 751, 774–75 (1982). The partnership submitted only one application for financing to Missouri Housing. It did not separately negotiate the loan periods contained in the notes and negotiated the interest rates for the construction and permanent financing during the same conversation with Missouri Housing. The district court's determination that Missouri Housing made only one loan to the partnership was not clearly erroneous. *See Lay v.*

*Commissioner*, 69 T.C. 421 (1976); *see also Wilkerson v. Commissioner*, 70 T.C. 240 (1978), *rev'd and rem'd on other grounds*, 655 F.2d 980 (9th Cir.1981).

We therefore affirm the district court's holding that Bevo Place Associates must amortize the financing fee over forty-two years. We also affirm the court's ruling that no part of this fee was deductible in 1978, because the partnership was not yet engaged in a trade or business.

## D. Organizational Expenses.

Bevo Place Associates amortized its organizational expenses over sixty months, starting in July 1978. The Aboussies sought deductions for their distributive shares of the expenses attributable to 1978. The district court denied the deductions, holding that the organizational expenses constituted nondeductible costs of constructing the housing project under section 263(a)(1). It ruled that the partnership must therefore capitalize and amortize the expenses over the life of the housing project.

The Government concedes that the district court erred in holding that the organizational expenses must be amortized over the life of the housing project. It admits that section 709 of the Code permits Bevo Place Associates to amortize organizational fees over sixty months, starting in the month that the partnership begins business. 26 U.S.C. § 709(b)(1)(1982). The Government contends, however, that the Aboussies were still not entitled to any deduction for organizational expenses in 1978 because the partnership did not "be-

excluded from section 162 are still deductible under section 212.

We decline to follow the *Hoopengarner* decision, concluding that section 212 only permits deductions for expenses incurred with respect to nonbusiness income. *See Hoopengarner*, 80 T.C. at 545 (Cohen, J., dissenting). It therefore has no application to Bevo Place Associates' expenditure incurred to get the loan and establish its rental business in the housing project.

Although it has no bearing on this case, we also observe that Congress has apparently over-

ruled *Hoopengarner* to the extent that the decision permitted deduction of such expenditures under section 212. In the Tax Reform Act of 1984, Congress amended section 195 to provide that taxpayers cannot immediately deduct these preoperating expenses, but can elect to amortize them over a five-year period, starting when business begins. *See* Pub.L. 98–369, Title I, § 94(a), 98 Stat. 614 (1984), *codified at* 26 U.S.C. § 195(c)(1)(A)(iii).

gin business" under section 709 during that year.

The "beginning business" requirement of section 709 conditions a partnership's right to start the sixty-month amortization of organizational expenses. Regulation section 1.709–2(c) defines "beginning business" within section 709 as follows:

> Ordinarily, a partnership begins business when it starts the business operation for which it was organized. The mere signing of a partnership agreement is not alone sufficient to show the beginning of business. If the activities of the partnership have advanced to the extent necessary to establish the nature of its business operations, it will be deemed to have begun business. Accordingly, the acquisition of operating assets which are necessary to the type of business contemplated may constitute beginning business for these purposes. The term "operating assets," as used herein, means assets that are in a state of readiness to be placed in service within a reasonable period following their acquisition.

Treas.Reg. § 1.709–2(c).

We agree with the Government that Bevo Place Associates did not "begin business" within section 709 at any time during 1978. The partnership formed for the business purpose of earning profits through rental of a housing project. The partnership had only started the project's construction by the end of 1978. Its activities, therefore, had not "advanced to the extent necessary to establish the nature of its business operations" as the owner of a housing project. Moreover, the project certainly was not "in a state of readiness to be placed in service within a reasonable time * * *."

We do not draw any conclusions concerning when the partnership did actually begin business under section 709. We hold only that it did not begin business in 1978. The partnership therefore could not start its amortization of the organizational expenses, and the Aboussies could not deduct any share of the expenses during that year.

Accordingly, we affirm, on alternate grounds, the district court's disallowance of the Aboussies' claimed deductions of organizational expenses for 1978, the tax year here in question.

## III. CONCLUSION.

We reverse the district court's holding that section 263(a)(1) barred the Aboussies' claimed tax and interest deductions. We affirm the district court's disallowance of the Aboussies' claimed deductions for the mortgage insurance premium, the construction loan financing fee, and organizational fees. We remand for further proceedings consistent with this opinion.