DOCTORS HOSPITAL REAL ESTATE, LTD., DOCTORS HOSPITAL MANAGEMENT CO., INC., TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doctors Hosp. Real Estate v. Commissioner
Docket No. 20343-91
United States Tax Court
T.C. Memo 1994-143; 1994 Tax Ct. Memo LEXIS 144; 67 T.C.M. (CCH) 2591; March 31, 1994, Filed *144 Decision will be entered under Rule 155. In 1979, a group of doctors organized a corporation, C, to develop and operate a hospital. C's shareholders formed a limited partnership, D, comprised of 43 partners, all but 2 of which were shareholders of C. C leased certain land to D and D agreed to lease to C certain fixed equipment and a hospital building to be constructed on the land. D did not manufacture or produce the equipment subject to the lease to C. Under the lease from D to C, D's maximum contributions for expenses related to the fixed equipment totaled $ 550,000. Under the lease, the rent C owed D was the amount necessary to maintain and service any indebtedness incurred in connection with the construction of the hospital, and C was also liable for "additional rent" in the amount of $ 550,000. For one of the taxable years in issue, D paid C the amount of the $ 550,000 cap on expenses, without determining its actual liability. For another year in issue, D and C did not actually exchange payments. Held: D does not qualify for the investment credit for 1984. Held, further, certain interest claimed as an ordinary deduction for 1985 and 1986 must be recharacterized *145 as investment interest. Held, further, certain construction-period interest may be currently deducted by D. For petitioner: Thomas E. Redding and Charles B. Koerth. For respondent: Carol Bingham McClure and John Eiman. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Respondent issued Doctors Hospital Management Co. (petitioner), as tax matters partner of Doctors Hospital Real Estate, Ltd. (DHRE), three notices of final partnership administrative adjustment (FPAA's). Collectively, the FPAA's covered DHRE's 1984 through 1986 taxable years. In the FPAA for 1984, respondent made an adjustment of $ 2,253,579 to DHRE's ordinary income, made an adjustment of $ 1,162,768.55 to DHRE's basis in section 38 property that is subject to the investment tax credit, and made certain adjustments to DHRE's construction-period interest, accelerated depreciation, and net qualified investment income. In the FPAA's for 1985 and 1986, respondent made ordinary income adjustments in the amounts of $ 1,470,948 and $ 1,444,580, respectively, and certain adjustments to construction-period interest, accelerated depreciation, investment interest expense, and net qualified investment *146 income. This case is before the Court pursuant to petitioner's petition under section 6226[1] for readjustment of the partnership items set forth in the FPAA. [2] Prior to trial, the Court denied petitioner's three motions to dismiss for lack of jurisdiction. *147 After concessions by petitioner, the issues for decision are: [3]
(1) Whether DHRE satisfies the noncorporate lessor requirements of section 46(e)(3) and thus qualifies for an investment credit for certain fixed equipment for 1984. We hold it does not. *148 (2) Whether certain investment interest claimed as an ordinary deduction must be recharacterized as investment interest. We hold it must. (3) Whether certain construction-period interest must be capitalized or may be currently deducted. [4] We hold it may be currently deducted. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by this reference. DHRE's principal place of business at the time it filed the petition was Victoria, Texas (Victoria). In 1979, a group of doctors began discussing the need for a new hospital in Victoria. The doctors organized Doctors Hospital of Victoria, Inc. (DHV) as a Texas corporation, with the intent of developing and operating a hospital. Stock was issued to 45 physicians practicing medicine in the Victoria *149 area. The doctors then began the process of applying to the State government for a certificate of need for a new hospital. They purchased the Hohf Clinic, with its existing certificate of need for a 50-bed hospital. In June 1981, DHV obtained a certificate of need for a new 106-bed hospital. [5]
After operating the Hohf Clinic for a little less than a year, the shareholders in DHV realized that they did not have the ability to develop a hospital and needed the assistance of a professional hospital management company. They chose Universal Health Services, Inc. (UHS), a Delaware corporation engaged in the business of operating and owning acute-care hospitals. In late 1980 or early 1981, DHV obtained an option to purchase 46.889 acres of property; DHV planned to build a hospital on 12 of the acres. The DHV shareholders formed a Texas *150 limited partnership, DHRE, comprised of 43 of the shareholders of DHV plus two other persons. During the years in issue, DHRE used the cash method of accounting and a calendar year taxable year. In 1982, DHV, DHRE, and UHS carried out a transaction memorialized in a Stock Purchase Agreement. In that transaction, UHS formed a wholly owned Texas subsidiary, Universal Health Services of Victoria, Inc. (Subsidiary). DHV exercised its option to purchase land on which to build the hospital. DHV as lessor and DHRE as lessee entered into a Ground Lease dated January 19, 1982, pursuant to which DHV agreed to lease certain land to DHRE. On the same day, DHRE and DHV entered into a Hospital Lease, pursuant to which DHRE agreed to lease to DHV a hospital building to be constructed on the land leased by DHV to DHRE pursuant to the Ground Lease. [6] The Hospital Lease granted DHRE the option to lease to DHV any equipment DHV proposed to lease from DHRE. DHRE had no responsibility for any expenses under the Hospital Lease; all expenses were borne by DHV as lessee. *151 Construction of the hospital was conducted pursuant to a written plan that was in existence on July 1, 1982, and as to which approval from a governmental unit had been requested in writing on May 14, 1981. Construction commenced before January 1, 1984. The hospital was completed in March 1984 and was placed in service on April 1, 1984. [7] The total cost was $ 13,012,403, excluding construction-period interest in the amount of $ 987,618 and the cost of the equipment. [8]
On March 30, 1984, DHV, DHRE, and Subsidiary entered into an agreement to execute a deed and bill of sale to clarify that DHRE owned the hospital building. *152 DHV agreed to lease the fixed equipment from DHRE, and DHV transferred title to DHRE by a "Bill of Sale". [9] Although the hospital was complete, DHRE had not yet obtained permanent financing; UHS and its subsidiaries had invested over $ 14 million in construction financing and equipment purchases. DHRE memorialized its debt for construction costs and fixed equipment by giving Subsidiary its note for $ 14 million while the parties continued to seek mutually agreeable third party financing. In 1984, UHS realized that the form of the Hospital Lease failed to meet certain standards of the Financial Accounting Standards Board, and initiated renegotiation of the lease. On December 28, 1984, a renegotiated hospital lease was executed (the Revised Lease). Under both the Hospital Lease and the Revised Lease, the rent was "such amount as shall be required to maintain and service any indebtedness incurred in connection with the construction of the Hospital *153 or in connection with any refinancing or refunding of such indebtedness." [10] Under the Revised Lease, DHV was liable for "additional rent" in the amount of $ 550,000. The lease of *154 the fixed equipment by DHRE to DHV was included in the Revised Lease. DHRE did not manufacture or produce the fixed equipment. Under the Revised Lease, DHRE's maximum contributions for expenses related to the fixed equipment total $ 550,000, the amount of the additional rent called for in the Revised Lease. Under the Revised Lease, even if DHRE was not liable for the full $ 550,000, DHV would still be required to pay the full $ 550,000 additional rent. Dr. William P. Sage, the treasurer of DHRE, never saw an accounting of the amounts it was required to contribute for expenses related to the fixed equipment. John Scott (Scott), an attorney, requested certain information from John Gill (Gill), area financial manager of UHS, annually, but Scott did not ask for an accounting of expenses on a lease-year basis. Gill never made an attempt to compute what the lease-year expense would be. On December 28, 1984, DHRE received a rent payment of $ 1,327,062.42. [11] During 1985, DHRE received rent payments totaling $ 1,838,627.30. From April 1, 1984, through March 31, 1985, DHRE received rent payments totaling $ 2,120,679.78. During 1986, DHRE received rent payments totaling $ 1,785,109.94. *155 On March 28, 1985, DHRE received $ 550,000 from DHV. Also on March 28, 1985, DHRE wrote four separate checks to DHV, totaling $ 550,000. DHRE always intended to have the equipment it leased to DHV qualify for the investment credit, and DHRE knew it would have to contribute to the maintenance of that equipment. However, DHRE's only source of cash was rents. Without the $ 550,000 from DHV, DHRE could not have made the four payments totaling $ 550,000. For the 1986 taxable year, neither UHS, Subsidiary, nor DHV paid the $ 550,000 additional rent, and DHRE did not pay any of the amounts under the revised lease that would total $ 550,000. DHRE worked mainly out of its checkbooks and did not keep a cash receipts and disbursements journal. DHRE deducted no expenses under section *156 162 on its 1984 Form 1065, U.S. Partnership Return of Income. For 1985, DHRE deducted expenses under section 162 totaling $ 6,417.28, excluding "rental expenses" of $ 550,500. For 1986, DHRE deducted expenses under section 162 totaling $ 12,837, excluding "rental expenses" of $ 550,581.65 and "rent" of $ 1,500. OPINION The notice of deficiency benefits from a presumption of correctness, and petitioner bears the burden of proving it erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Investment Credit
Section 38(a) generally allows taxpayers an investment tax credit. Section 46(e)(3) allows a credit to a business lessor of personal property other than a corporation if (1) the property subject to the lease has been manufactured by the lessor or (2) the term of the lease, including options to renew, is less than 50 percent of the useful life of the property and, for the 12-month period immediately following the transfer of the property to the lessee, the sum of the deductions allowable to the lessor under section 162 (other than rents and reimbursed amounts) exceeds 15 percent of the rental income produced by such property. *157 In enacting section 46(e)(3), Congress intended to deny an investment credit to noncorporate lessors who remain mere passive investors. Carlson v. Commissioner, 79 T.C. 215, 221 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); S. Rept. 92-437, at 44 (1971), 1972-1 C.B. 559, 583; H. Rept. 92-533 at 29, 1972-1 C.B. 498, 513; see also Sutow v. Commissioner, T.C. Memo. 1992-473. DHRE, a partnership, is subject to this "noncorporate lessor" limitation. Since DHRE did not manufacture the fixed equipment subject to the lease, DHRE qualifies for the credit only if it satisfies the "useful life" and "expense" tests of section 46(e)(3). The hospital opened on April 1, 1984; we assume this is the date on which the fixed equipment was transferred to DHV, the lessee. Therefore, the applicable 12-month period runs through March 31, 1985. DHRE did not deduct any expenses under section 162 on its 1984 Federal income tax return, and did not establish its entitlement to any expenses not so deducted. On its 1985 Federal income tax return, DHRE deducted certain *158 expenses under section 162 totaling $ 6,417.28. [12] Assuming arguendo that DHRE incurred the entire $ 6,417.28 during the first quarter of 1985, these deductions do not exceed 15 percent of the rental income under the Revised Lease, which totaled $ 2,120,679.78. Thus, to meet the expense test, DHRE claims that the $ 550,500 it expended and deducted on its 1985 Federal income tax return was properly deductible under section 162. The term "reimbursed amounts" is defined as amounts that the lessee or some other person is obligated to reimburse the lessor. Sec. 1.46-4(d)(3)(ii), Income Tax Regs. DHV was obligated to pay DHRE $ 550,000, in return for DHRE's $ 550,000 payment. We do not credit petitioner's argument that DHRE's payment to DHV was merely capped at $ 550,000 and might have been less. On March 28, 1985, DHRE wrote four separate checks to DHV, totaling $ 550,000, and DHRE received $ 550,000 *159 from DHV. Without the $ 550,000 from DHV, DHRE could not have made the four payments totaling $ 550,000. In the following year, neither party actually made the offsetting "mandatory" payments to each other. [13] We find that, during the applicable 12-month period, DHV reimbursed DHRE for all expenses (other than $ 6,917.28) that DHRE would have been allowed to deduct under section 162. Cf. Sutow v. Commissioner, supra.Accordingly, because we hold that DHRE fails to meet the "expense test" under section 46(e)(3), we do not reach the issue of whether the term of the lease, including options to renew, is less than 50 percent of the useful life of the property. Investment Interest
In any taxable year, a taxpayer is generally restricted from deducting investment interest that exceeds the taxpayer's investment income for the taxable year. Sec. 163(d)(1). *160 Section 163(d)(4)(A) deems certain property subject to a lease to be property held for investment; any interest claimed with respect to that property is investment interest. Section 163(d)(4)(A) applies where, during the taxable year, (1) the sum of the deductions allowable to the lessor under section 162 (other than rents and reimbursed amounts) do not exceed 15 percent of the rental income produced by such property, or (2) the lessor is guaranteed a specific return or is guaranteed in whole or in part against loss of income. Nicholson v. Commissioner, T.C. Memo. 1993-183, on reconsideration, T.C. Memo. 1993-427. Petitioner concedes that respondent's determination of 1984 net investment income is correct. In 1985, DHRE deducted $ 6,417.28 in expenses under section 162, excluding "rental expenses" of $ 550,500, which were reimbursed amounts to the extent of $ 550,000. Aside from reimbursed amounts, DHRE's expenses do not exceed 15 percent of the rental income produced by the Hospital Lease for 1985, which totaled $ 1,838,627.30. In 1986, DHRE deducted $ 12,837 in expenses under section 162, excluding "rent" of $ 1,500 *161 and "rental expenses" of $ 550,581.65 that were reimbursed amounts to the extent of $ 550,000. DHRE's expenses, other than rent and reimbursed amounts, do not exceed 15 percent of the rental income produced by the Hospital Lease for 1986, which totaled $ 1,785,109.94. Accordingly, the interest claimed by petitioner for 1985 and 1986 is investment interest within the meaning of section 163(d)(4)(A). Based on this determination, petitioner concedes on brief that the correct amount of net investment income for 1985 and 1986 is as set forth in the FPAA's for those years. Thus, we need not reach the issue of whether DHRE was guaranteed a specific return or is guaranteed in whole or in part against loss of income. Construction-period interest
In her FPAA's, respondent determined that DHRE's construction-period interest was not currently deductible, but must be capitalized and amortized over a 10-year period. However, respondent allowed petitioner a deduction for construction-period interest deductible by a corporate partner of DHRE. Respondent argues that DHRE must capitalize construction-period interest and amortize it over 10 years. Petitioner argues that DHRE was entitled *162 to a current deduction for such interest. As enacted by the Tax Reform Act of 1976, Pub. L. 94-445, sec. 201, 90 Stat. 1520, 1525, section 189(a) provided: Except as otherwise provided in this section or in section 266 * * *, in the case of an individual, no deduction shall be allowed for real property construction period interest and taxes. * * *
Sec. 189(a) (emphasis added). The Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 207(a), 96 Stat. 324, 431, amended this section, eliminating the language underscored above; the amendment appears to deny a larger group of persons a deduction for construction-period interest and taxes. As amended by Pub. L. 97-248, 96 Stat. 431, section 189(a) read: Except as otherwise provided in this section or in section 266 * * *, no deduction shall be allowed for real property construction period interest and taxes.
This amendment is generally effective with respect to taxable years beginning after December 31, 1982, with respect to construction commencing after such date. However, section 207(e)(2) of Pub. L. 97-248, 96 Stat. 432, provides in part that this amendment does not apply to the construction *163 of a hospital if: (1) The construction is conducted pursuant to a written plan of the taxpayer which was in existence on July 1, 1982, and as to which approval from a governmental unit has been requested in writing, and (2) the construction commences before January 1, 1984. Based on the stipulated facts, petitioner has met these two elements, and is therefore subject to the preamendment rule. Thus, the version of section 189(a) applicable to the transaction discussed herein prohibits only individuals, not partnerships, from deducting construction-period interest and taxes; DHRE is entitled to deduct such interest, and we rule for petitioner on this issue. Cf. Aboussie v. United States, 779 F.2d 424, 427 (8th Cir. 1985). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent issued three notices of final partnership administrative adjustment (FPAA's) on June 3, 1991. The petition was filed on Sept. 9, 1991, and does not bear a United States postmark. The tax matters partner of a partnership has 90 days from the date the FPAA was mailed in which to file a petition. Sec. 6226(a)(1). If the tax matters partner does not file a petition within that 90-day period, any notice partner of the partnership may file a petition within 60 days after the close of the 90-day period. Sec. 6226(b)(1). The tax matters partner of a partnership may also be a notice partner. Barbados #6 Ltd. v. Commissioner, 85 T.C. 900↩ (1985). Although petitioner filed the petition after the close of the 90-day period, it is nonetheless timely because petitioner filed the petition within the following 60 days and petitioner is a notice partner of DHRE. See secs. 6223(a), 6231(a)(8).
3. Petitioner conceded that: (1) The downward adjustment under sec. 38 reflected in the FPAA's are correct, and that DHRE's claimed cost basis in sec. 38 property must be reduced by $ 1,162,768.55; (2) certain adjustments to depreciation made in the FPAA's are correct; and (3) certain interest expense claimed as an ordinary deduction for 1984 must be recharacterized as investment interest under sec. 163(d)(4). Petitioner did not assign as an error respondent's adjustments to depreciation of a hospital building. Therefore, petitioner is deemed to have conceded this issue. Rule 34(b)(4); Merlino v. Commissioner, T.C. Memo. 1993-200. In addition, petitioner presented no persuasive evidence on this issue, and did not meet its burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The amount of accelerated depreciation that should be treated as a sec. 57(a)(2) tax preference item for each year in issue, a computational adjustment, must also be determined. Prior to trial, petitioner made a motion for summary judgment regarding DHRE's basis in sec. 38 property, arguing that sec. 46(e) does not constitute a legal basis under which DHRE's basis in sec. 38↩ property may be adjusted. We took this under advisement, and it will be deemed moot based on petitioner's concession.
4. Prior to trial, the parties filed cross-motions for summary judgment on this issue. We took these motions under advisement, and our decision on this issue is reflected herein.↩
5. The application for a certificate of need reflected that the hospital would be owned by DHV; the application called for a new 106-bed hospital and the closing of the Hohf Clinic.↩
6. After the Ground Lease and Hospital Lease were in place, the shareholders of DHV sold all their stock to Subsidiary.↩
7. The hospital is a four-story health care facility of approximately 90,637 square feet located on a 12 acre site.↩
8. At the time DHRE was formed, the estimated cost of constructing the hospital was approximately $ 12 million. The equipment leased to the hospital ultimately cost approximately $ 4 million to $ 5 million. The cost of the equipment was included in the $ 12 million estimate.↩
9. DHRE did not own any of the movable equipment in the hospital.↩
10. Under DHRE's $ 14 million note of Mar. 30, 1984, DHRE agreed to pay Subsidiary equal monthly installments of $ 147,451.38 on the first day of each month, commencing on May 1, 1984, and terminating on April 1, 2009. On Dec. 28, 1984, DHRE and Canadian Imperial Bank of Commerce (Canadian) entered into a Term Loan Agreement for a loan in the amount of $ 10 million. This loan was payable in full on Dec. 28, 1992, but permitted DHRE to make prepayments in increments of $ 1 million. DHRE signed a note in favor of Canadian in the amount of $ 10 million. The proceeds of this note were paid to Subsidiary on Dec. 28, 1984, to satisfy $ 10 million of DHRE's obligation to Subsidiary under DHRE's note dated Mar. 30, 1984. Also on Dec. 28, 1984, DHV cancelled the $ 14 million note and substituted a note for $ 14,065,000 dated Mar. 30, 1984.↩
11. On its 1984 Federal income tax return, DHRE reported net rental income of $ 1,327,062.42. This amount equals the 9 monthly payments of $ 147,451.38 due DHV on its $ 14 million. For 1984, DHRE did not report gross rents or rental expenses.↩
12. Petitioner did not establish DHRE's entitlement to any deductions under section 162↩ in excess of those claimed.
13. Thus, petitioner did not prove that DHV was liable for the $ 550,000 regardless of whether DHRE made its payments.↩