ROBERT M. AND CHRISTINE M. LINSMAYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Linsmayer v. Commissioner
Docket No. 15094-92.
United States Tax Court
T.C. Memo 1995-437; 1995 Tax Ct. Memo LEXIS 441; 70 T.C.M. (CCH) 664; September 12, 1995, Filed *441 Decision will be entered for respondent. Mark A. Pridgeon, for petitioners. Jack Forsberg, for respondent. SCOTT, Judge SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1985 in the amount of $ 15,973.20 and an addition to tax under section 6651(a)(1) of $ 1,700.80. The issues for decision are: (1) Whether petitioners are entitled to deduct a pro rata portion of a full year's depreciation computed under the accelerated cost recovery system provided for in section 168[1] for equipment placed in service in December 1985 by a partnership, Lockville Hydro Power Co. (Lockville), or are limited to their pro rata share of one- twelfth of the full year's depreciation under the provisions of section 168(f)(5); (2) whether $ 1,766 of the expenses claimed on the partnership return of income of Lockville for the year 1985 as other deductions are properly deductible or are organizational expenses which must be amortized and deducted over a 60-month period; and (3) whether petitioners are liable for an addition to tax under section 6651(a)(1) for failure to timely file their Federal income *442 tax return for 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in St. Paul, Minnesota, at the time of the filing of their petition in this case, filed their Federal income tax return for the calendar year 1985 on October 31, 1988, after having been granted extensions of time for the filing of that return to October 15, 1986. Robert M. Linsmayer (petitioner) is a registered professional engineer. He has a degree in engineering from the University of Minnesota and a master's degree from the Carnegie Institute of Technology in Pittsburgh, Pennsylvania. After the conclusion of World War II, petitioner was employed by Chrysler Corp. in Detroit as a mechanical and metallurgical engineer. He then became employed by Knowles Atomic Power Laboratory, *443 operated by General Electric, where he worked on development of materials for atomic power. Later he was employed by the Radar Development Center at Wright-Patterson Air Force Base in Dayton, Ohio, as acting chief metallurgist for the office of air research, where he worked primarily on developing titanium as a material for aircraft. After petitioner left the Radar Development Center in Dayton, Ohio, he returned to Minnesota and became self-employed as a consulting engineer. Petitioner worked for Alloy Engineering & Casting Co. of Champaign, Illinois, in connection with high temperature materials for jet engines and for Villaume Box and Lumber Co. (Villaume). Later he became operations manager and then president of Villaume and, at the time of the trial in this case, was still serving as a consultant to that company and chairman of the board of Villaume. Petitioner served as an officer and an employee of Vallaume throughout the year here in issue, but also continued his consulting business. During the year here in issue and for some years prior thereto, and up until the time of the trial of this case, petitioner had been involved with the formation of several companies and had served *444 as an officer of some of those companies. Some of the companies with which petitioner was involved had been sold at a profit after their formation. In the late 1970's, petitioner became interested in the development in hydroelectric power. He made an unsuccessful bid for a project in Minnesota. In 1983, petitioner became interested in the possibilities of hydroelectric power use in North Carolina. He personally made a downpayment to purchase a site containing an abandoned hydropower facility near Moncure, North Carolina. Petitioner first formed a partnership named Lockville Hydro Power Co. in which he was one of the general partners and a corporation was the other. However, the corporation withdrew from the partnership and, in July of 1984, petitioner and John Leroy Townsend, Jr., formed a general partnership named Lockville Hydro Power Co. (Lockville), as a successor to the previous partnership of the same name. Petitioner held a 50-percent interest in Lockville. Lockville acquired the piece of real property near Moncure, North Carolina, on which petitioner had originally made the downpayment, and in July or August 1984 Lockville began reconstructing and renovating the hydroelectric *445 facility. Petitioner and Mr. Townsend entered into a written partnership agreement. Article II of that agreement stated as the purposes of the partnership the following: (a) Real Estate. To engage generally in the real estate business; to improve or develop real estate; to construct, alter, or repair buildings or structures on real estate; to administer and manage other real estate businesses; to invest in real estate; to sell, to exchange, to lease, and to make contracts concerning real estate. (b) General Purposes. To engage in the business of purchasing hydroelectric facilities or sites for the same and construction, renovating and refurnishing the same to become productive generators of hydroelectric power; to sell such power to any consumer at the rate, in the quantities, for the terms and conditions as allowed by production, the applicable laws of any governmental authority, and for such terms and conditions as the "Partnership" shall determine. (c) Other Purposes. To enter into other partnership agreements in the capacity of a general partner or a limited partner, to become a member of a joint venture, or to participate in some other form or syndication for *446 investment; to own stock in a corporation; to guarantee debts or obligations of entities in which the Partnership has an interest; and to buy, sell, lease and deal in services, personal property and real property.
At the time the renovation of the hydroelectric facility near Moncure, North Carolina, began, petitioner considered himself to be the general manager of the project, and as such, he intended to oversee the project and its overall management and finances. However, when the contractor hired by the partnership to serve as the primary contractor was unable to fulfill that role, petitioner in effect became the chief engineer of the project. The general contractor initially engaged in July or August of 1984 served until September of 1985 when he was fired. At the time the general contractor was fired, the canal had been cleared, the dam and gates had been repaired, and the mechanical work was completed, but not correctly done. The electrical work, however, was largely incomplete. The turbines were installed in August or September of 1985. Petitioner, after the general contractor was fired, monitored the reconstruction and renovation of the plant on a daily basis. On December *447 19, 1983, Lockville (the prior partnership) made an application to the Carolina Power & Light Co. (CP&L) to sell power upon the completion of the renovation and reconstruction of the hydroelectric power facility on the property owned by the partnership. This application was approved by CP&L on January 5, 1984, and thereby became effective as a contract. The agreement, as modified on May 28, 1985, with respect to interconnection facilities that were to be installed for connections between Carolina Power & Light and the Lockville Hydro Power Co., provided that the purchasing of power was to begin June 1, 1984, or upon completion of refurbishing of the Lockville plant. At the end of 1985, a part-time employee began working for Lockville as the operator of the facility. Lockville's hydroelectric facility was ready to come on line with CP&L's power grid on December 31, 1985. However, on December 31, 1985, when Lockville attempted to come on line with the CP&L power grid, the CP&L "pride relays" prevented Lockville from coming on line due to the fact that CP&L had set the relays incorrectly. The problem with the CP&L pride relays was corrected within a few days, and in early January of *448 1986 the hydroelectric facility began commercially generating electricity for sale to CP&L. A pride relay is a device which protects the power grid by cutting out if there is a power surge. Lockville never acquired or renovated any hydroelectric facilities other than the facility near Moncure, North Carolina, nor did it attempt to acquire or renovate any other such facilities. Lockville never engaged in any business other than the hydroelectric generation business. Lockville filed a U.S. Partnership Return of Income, Form 1065, for the calendar year 1984. The only income reported on this return was $ 346.69 of nonqualifying dividends. The return showed expenses of $ 352.73, consisting of amortization of $ 280.95 and office supplies of $ 71.78, resulting in an ordinary loss of $ 6.04. Lockville filed a U.S. Partnership Return of Income, Form 1065, for the calendar year 1985. On this return taxable interest and nonqualifying dividends of $ 2.89 were reported, and no other income was reported. A deduction for depreciation computed under the accelerated cost recovery system (ACRS), provided for in section 168, in the amount of $ 255,816.55 was claimed as a deduction. Under other deductions, *449 an amount of $ 1,796.44 was claimed. These other deductions were explained as professional fees of $ 1,066.20, office supplies of $ 55.92, and amortization of startup expenses of $ 674.32. The 1985 return of income of Lockville reported a loss of $ 257,610.10. Petitioners on Schedule E of their Federal income tax return for the calendar year 1985 claimed a loss from Lockville of $ 128,805. The Form K1 furnished by Lockville to petitioner showed his pro rata part of the Lockville loss as $ 128,806.49. Respondent in her notice of deficiency to petitioner disallowed $ 118,131 of the loss claimed by petitioner from Lockville with the following explanation: 1A. Depreciation is adjusted because the property was not used in a trade or business or the production of income until 12-31-85. Accordingly, your taxable income is increased $ 117,248.00.
Claimed
$ 127,907.00
Allowed
10,659.00
Adjustment
117,248.00
1B. The deduction of $ 898.00 shown on your return as other Lockville expenses is reduced by $ 883.00 because it has not been established that any amount greater than $ 15.00 was for an ordinary and necessary business expense or was used in a trade or business.
*450 Petitioner takes the position that Lockville was in a trade or business during the entire year of 1985, and that petitioner personally was in a trade or business during that year, and, therefore, the disallowance in part of the Lockville loss deduction was improper. OPINION Section 168(a) provides that there shall be allowed as a deduction for any taxable year an amount determined under this section with respect to recovery property. Section 168(c) defines recovery property for the purposes of this title as follows: "(1) 'Recovery property' defined. Except as provided in subsection (e), the term recovery property means tangible property of a character subject to the allowance for depreciation--(A) used in a trade or business, or (B) held for the production of income." The section provides for various classes of recovery property. Section 168(f) provides special rules for application of section 168, and section 168(f)(5) states as follows: Short taxable years. In the case of a taxable year that is less than 12 months, the amount of the deduction under this section shall be an amount which bears the same relationship to the amount of the deduction, determined without regard *451 to this paragraph, as the number of months in the short taxable year bears to 12. In such case, the amount of the deduction for subsequent taxable years shall be appropriately adjusted in accordance with regulations prescribed by the Secretary. The determination of when a taxable year begins shall be made in accordance with regulations prescribed by the Secretary. * * *
Petitioners contend that since the partnership was formed in 1984 and filed a return for that year, it was entitled to a full year's deduction for its hydroelectric plant under section 168(a) for 1985. It is respondent's position that although the partnership came into existence under State law and filed a return for the full year 1985, it was not until December 1985 that it first engaged in a trade or business by putting the hydroelectric plant on line. It is petitioner's contention that not only was the partnership in existence but that it was in the business of the renovation of the facility throughout 1985 and, therefore, the partnership should be considered to be in a trade or business during the entire year 1985. Petitioners further contend that, in any event, since petitioner was in a trade or business *452 during the entire year 1985, the deduction should not be disallowed to him whether or not the partnership was in a trade or business. A depreciation deduction computed under section 168 is allowable only with respect to property used in a trade or business or used for the production of income. Respondent argues that it follows that for a depreciation deduction to be allowed for a full year on the hydroelectric plant placed in service after the beginning of the taxable year, the Lockville partnership must have been in a trade or business during the entire taxable year. The record shows that the Lockville partnership was in existence under State law during the entire year 1985, but it is respondent's position that it was not in a trade or business of any type in 1985 until December 31 when the hydroelectric plant was put on line enabling the partnership to produce electricity. Respondent contends that the production of electricity was Lockville's only trade or business. Respondent argues that the facts do not support petitioner's position that Lockville was in the trade or business of refurbishing its plant during the entire year 1985, before it began the trade or business of producing *453 electric power in December. We have recognized in at least one case that in order to deduct depreciation for a full year under section 168, it is not necessary that the business of the taxpayer for the full year be the same business as that in which the recovery property is used. McKnight v. Commissioner, T.C. Memo. 1990-69. Our holding in the McKnight case was that the taxpayer "was engaged in a trade or business in 1985 prior to his investment in the depreciable equipment and is entitled to a full year's depreciation under ACRS." The clear inference from this statement and the discussion in the McKnight case is that if the taxpayer there had not been engaged in some trade or business, he would only have been entitled to a depreciation deduction for one-third of the year, since he did not engage in the trade or business in which the depreciable equipment was used until September when that equipment was put in service. In Greene v. Commissioner, T.C. Memo. 1988-331, we stated that the fact that section 168(f)(5) directed the Secretary of the Treasury to promulgate regulations to determine when a taxable year begins, *454 indicates that Congress in the use of that section of the term "short taxable year" had something in mind other than returns for "short periods" under section 443. We then stated: "Petitioner was not engaged in the barge transportation business prior to December 1983. As such he could not deduct expenses related to that trade or business prior to the date he commenced carrying on such business." We concluded for this reason that petitioners were entitled to only one- twelfth of a year's depreciation under section 168(a). Our attention has been called to no case, nor have we found a case, allowing a depreciation deduction under section 168 for a full year when the taxpayer was in no trade or business until the end of the year and did not put the property into service until the end of the year. Cf. Greene v. Commissioner, supra; McKnight v. Commissioner, supra. We, therefore, consider it necessary in this case to decide whether Lockville was in any trade or business prior to December 1985. On the facts here present, we conclude that the refurbishing of the hydroelectric plant done by Lockville was in preparation *455 for entry into the trade or business of producing power and was not itself a trade or business. The wording of the business purpose of the partnership as it appears in the partnership agreement, indicates that the plant was refurbished in order to use the facilities for the production of power. The only business purpose stated in the partnership agreement that could be applicable here is: To engage in the business of purchasing hydroelectric facilities or sites for the same and construction, renovating or refurnishing the same to become productive generators of hydroelectric power; to sell such power to any consumer at the rate, in the quantities, for the terms and conditions as allowed by production, the applicable laws of any governmental authority, and for such terms and conditions as the "Partnership" shall determine.
We interpret this provision to mean that the facilities were to be refurbished for the production of electric power. Certainly, if purchasing and renovating hydroelectric facilities were to be considered a business, it would have to be a business that would produce income. Income could be produced by the sale of the refurbished facilities or by using the *456 facilities in the business of producing and selling electric power. If any doubt exists as to whether the refurbishing was to enhance a capital asset of the partnership that was to be used to produce and sell power, that doubt is removed by considering what, in fact, was done by the partnership prior to the time the refurbishing was completed. Lockville had an agreement to begin furnishing electric power to CP&L on June 1, 1984, or when the refurbishing of its plant was complete. On May 28, 1985, the agreement was amended to specify exact connections and an estimated quantity of energy to be produced by Lockville for CP&L. It is, therefore, clear that the refurbishing of the plant was being done to enable Lockville to sell power to CP&L. Obviously to sell this power Lockville had to produce the power. Based on these facts, we conclude that Lockville's refurbishing of its plant was the development of a capital asset that was to be used in its trade or business of producing and selling power. We, therefore, conclude that Lockville did not actually enter its trade or business until December 1985 when it began to produce power. In Richmond Television Corp. v. United States, 345 F.2d 901, 905 (4th Cir. 1965), *457 vacated on other grounds 382 U.S. 68 (1965), the court pointed out that since expenses to be deductible must be incurred in "carrying on" a trade or business, "preoperating" expenses incurred between the time of the decision to establish a business and the actual beginning of the business operation are not deductible in the year incurred but must be capitalized. The issue of when the operation of a business begins is factual but numerous cases provide guidelines. A partnership, like any other entity, is required to capitalize startup expenses. Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 517 (7th Cir. 1980), affg. 72 T.C. 521 (1979). The acquisition or construction of property for future business use does not constitute engaging in a trade or business. Aboussie v. United States, 779 F.2d 424, 428 (8th Cir. 1985); see also Simonson v. United States, 752 F.2d 341, 343 (8th Cir. 1985). We have held that for Federal tax purposes, a partnership cannot exist unless the parties involved have a good-faith intent to presently conduct *458 an enterprise with a business purpose. Peters v. Commissioner, 89 T.C. 423, 436 (1987); Torres v. Commissioner, 88 T.C. 702, 736 (1987). We conclude that Lockville's business did not begin until December 1985. Our attention has been called to only two cases involving when a partnership's taxable year begins for the purposes of section 168(f)(5). In Williams v. Commissioner, T.C. Memo. 1987-308, the issue was the amount of depreciation under section 168 to which a partnership, North Madison, was entitled with respect to an automotive repair service. The facts there showed that in June 1981, North Madison agreed to purchase an old service station and immediately took possession of the garage, although title was not actually transferred until late August or early September of 1981. In June, North Madison agreed to acquire a pipe bending machine to make custom exhaust systems, but this machine was not operational until August. However, the record showed that North Madison began repairing some automobiles and installing some mufflers in July 1981. We held that North Madison had a short taxable *459 year within the meaning of section 168(f)(5), since its first taxable year began in July 1981 when it started "refurbishing the building and repairing a few automobiles". We concluded that the depreciation deduction under section 168 was for a 6-month period, since for the purposes of section 168(f)(5) North Madison commenced its repairing automobiles in July and at that time its 1981 short taxable year began. The other case involving the provisions of section 168(f)(5) with respect to a partnership to which our attention has been directed is Sutow v. Commissioner, T.C. Memo. 1992-473. The facts in that case are quite similar to those in the instant case. The facts showed that the partnership bank account was opened in May 1983, and by June 1983 interest of $ 302.47 had been credited to the account. In October 1983, the partnership agreed to acquire certain computer peripheral equipment. The equipment was leased and installed in December 1983 at which time the partnership began to accrue rent. The partnership on its 1983 return reported interest income of $ 196. In the Sutow case, a depreciation deduction of $ 30,440 was claimed by the partnership *460 under section 168 on the partnership return of income based on a full year's depreciation. In the Sutow case, we stated that a partnership's taxable year is determined by the period for which it must file a return. We held that the partnership there involved was entitled to only one-twelfth of a full year's depreciation under the provisions of section 168(f)(5). In reaching this conclusion, we stated that the record was unclear as to when, if at all, before December 1983 the partnership first realized income or paid deductible expenses. We came to this conclusion even though we had found that the partnership had been credited with interest on its bank account of $ 302.47 in June 1983, and had reported interest of $ 196 on its 1983 return. Since we had found that the partnership had interest income in June 1983, the "first realized income" in December 1983, to which we referred must have been income after it commenced its business operations. In the Sutow case, the partnership did not commence a trade or business until December 1983. It was this later time we used to determine the partnership's short taxable year. Lockville carried on no trade or business until December 1985. *461 We conclude that for 1985 Lockville had a short taxable year of 1 month for Federal income tax purposes. It follows that under section 168(f)(5)Lockville must pro rate the depreciation claimed on its hydroelectrical equipment and is limited to one-twelfth of a year's depreciation on that equipment for 1985. Petitioner next contends that he was in a trade or business of being a corporate director during the entire year 1985 and, therefore, is entitled to his one-half of a full year's depreciation deduction on Lockville's facilities. The record in some respects tends to support petitioner's contention that during all of 1985 one of the trades or businesses in which he engaged was being a corporate director. However, we consider it unnecessary to analyze the evidence in detail and come to a conclusion whether, in fact, petitioner was engaged in such a trade or business during the entire year 1985. If we assume as petitioner contends that during the entire year 1985 he was engaged in a trade or business of being a corporate director, we would not allow him the depreciation on the hydroelectric plant owned and operated by the partnership. Although after the taxable income of a partnership *462 is computed, each partner reports on his or her return his or her pro rata share of the partnership income or loss, the partnership is treated as a separate entity for purposes of calculating the taxable income to be pro rated. United States v. Basye, 410 U.S. 441, 448-449 (1973). Petitioners, in support of their position, rely on McKnight v. Commissioner, T.C. Memo. 1990-69. The McKnight case involved an individual who was engaged in the business, among others, of being a corporate director. In September 1985 he purchased a 5-percent interest in a leasing trust, a grantor trust formed as an investment vehicle for the purchase of certain computer equipment. The computer equipment was placed in service in September 1985. The taxpayer claimed a depreciation deduction under the accelerated cost recovery system of section 168 for the entire taxable year. In that case, we discussed the provisions of section 168(f)(5) and concluded that it was not necessary that a taxpayer be engaged in the business in which the equipment was used in order to obtain a full year's deduction for depreciation under section 168, as long as the *463 equipment was used in a trade or business, and the taxpayer was in some trade or business during the entire year. Although the taxpayer there owned his 5-percent interest in the computer equipment through a grantor trust, the grantor trust was not a separate entity for the computation of income and, therefore, the case was no different from a case in which the taxpayer had personally bought the equipment. While the McKnight case indicates that as long as a taxpayer is engaged in some trade or business during the entire taxable year he may deduct depreciation under section 168 on equipment put in service in the latter months of that taxable year in a different type of trade or business, it does not in any way discuss the question of whether partnership income must be separately computed, although reported on a pro rata basis by the individual partners. This case involves a partnership and, for the reasons we have previously stated, we conclude that since it is the partnership that must have the allowable deduction, it is the partnership that must be in a trade or business for the entire year in order to get the full year's depreciation deduction under section 168. Here, we have *464 found that the partnership did not commence a trade or business before December 1985, even though it had been formed and was doing work preparatory to commencing a trade or business prior to 1985. We, therefore, conclude that the fact that petitioner was personally in a trade or business during the entire taxable year 1985 is immaterial to the issue here involved. The only argument petitioners make with respect to the $ 883 of deductions disallowed by respondent on the basis that the amounts represent startup expenses of Lockville which are required to be capitalized, is that Lockville was in the business of refurbishing hydroelectric plants and those expenses were part of that cost. Until December 1985 all of Lockville's activities were in preparation to enter its business of producing and selling electric power, and, therefore, its expenditures were startup expenses that must be capitalized. We, therefore, sustain respondent with respect to the disallowance of the deduction of the startup expenses. The only argument petitioners make with respect to respondent's determination of the addition to tax for late filing of their return is that they owe no tax and the addition is based *465 on a percentage of the tax. Under our conclusion, petitioners will owe tax and, therefore, have made no showing that respondent erred in determining the addition to tax for failure to timely file their return. We sustain the determination by respondent of an addition to petitioners' 1985 tax under section 6651(a)(1). Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩